UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL TROEGER,

                   Plaintiff,

   -v-                                          1:12-cv-1882
                                                   (DNH/CFH)

ELLENVILLE CENTRAL SCHOOL DISTRICT,

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                   OF COUNSEL:

MICHAEL TROEGER
Plaintiff pro se
171 Black Road
Shokan, NY 12481

DRAKE, LOEB, HELLER, KENNEDY,        ADAM L. RODD, ESQ.
   GOGERTY, GABA AND RODD, PLLC
Attorneys for Defendants
555 Hudson Valley Avenue, Suite 100
New Windsor, NY 12553


DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

     Pro se plaintiff Michael Troeger ("plaintiff" or "Troeger") brings this action against defendant Ellenville Central School District ("Ellenville") alleging employment discrimination on the basis of disability and retaliation. Plaintiff seeks injunctive relief and compensatory damages.

Defendant moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 4(m) based upon insufficient service of process. ECF No. 5. Plaintiff opposed, defendant replied and plaintiff filed a sur-reply without permission. Plaintiff then moved for a preliminary injunction. ECF No. 17. Defendant opposed that motion and plaintiff replied. Recently, plaintiff filed another motion for injunctive relief. ECF No. 22. All of the pending motions were considered on their submissions without oral argument.

## II. **BACKGROUND**[1]

Plaintiff is a guidance counselor employed by Ellenville. He alleges, inter alia, that Ellenville discriminated against him on the basis of his disability, improperly confiscated his sick time, and retaliated against him for his complaints of discrimination. He was initially injured in November 2004 and October 2005 while working, leaving him "permanently/ partially disabled, in that he could not walk, sit, stand, bend, sleep, lift, or run like that of an average person of his age due to two herniated discs in his back." Compl. ¶¶ 7–8. After filing various complaints directly with the school, plaintiff filed a complaint of discrimination

---

[1] Although not directly relevant to this motion, it is noted that plaintiff previously litigated a civil action against Ellenville in the Northern District of New York before Chief Judge Gary L. Sharpe based on almost identical facts. It is clear from that case that plaintiff's allegations date back to 2004 when he injured his lower back while lifting a conference table at work. Troeger v. Ellenville Cent. Sch. Dist., No. 1:10–cv–718, 2012 WL 1605532, at *1 (N.D.N.Y. May 8, 2012) (Sharpe, J.). His injury was exacerbated in 2005 when he was pushed into a filing cabinet by a student. Id. In that lawsuit, plaintiff alleged that Ellenville impermissibly docked his sick leave and failed, on multiple occasions, to reasonably accommodate his disability in violation of the Americans with Disabilities Act ("ADA"). Id. Defendant moved for summary judgment and Chief Judge Sharpe granted the motion in part, leaving one ADA claim for trial. Id. at *3–8. Upon defendant's motion for reconsideration, Chief Judge Sharpe dismissed the remaining ADA claim, thus dismissing the complaint, and ordered the case closed. Troeger v. Ellenville Cent. Sch. Dist., No. 1:10–cv–718, 2012 WL3643839, at *1–4 (N.D.N.Y. Aug. 23, 2012) (Sharpe, J.). Plaintiff appealed. On May 9, 2013, the United States Court of Appeals for the Second Circuit affirmed the dismissal of plaintiff's complaint, including the determination that plaintiff's allegations were time barred and the determination that plaintiff did not suffer from a disability within the meaning of the ADA. Troeger v. Ellenville Cent. Sch. Dist., 523 F. App'x 848, 851–52 (2d Cir. May 9, 2013) (summary order).

against Ellenville with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 27, 2012. On September 24, 2012, he was mailed a right-to-sue letter from the EEOC.

Troeger filed this complaint on December 26, 2012. Two days later, on December 28, 2012, the Clerk of the Court issued to plaintiff a Summons to serve on defendant. Plaintiff was mailed a copy of the court's Pro Se Handbook and General Order Number 25 on the same date. A Filing Order was also issued which instructed that the complaint must be served on defendant within 60 days of filing the action and an initial conference was scheduled for April 9, 2013 with United States Magistrate Judge Christian F. Hummel. On February 21, 2013, four days shy of the 60 day deadline in which to serve the complaint pursuant to General Order Number 25 (by February 25, 2013), plaintiff requested an adjournment of the initial conference and indicated that due to retaliation by his employer, he had been rendered medically incapacitated and service of the complaint had not yet been effected. On February 26, 2013, plaintiff's request was granted and the initial conference was adjourned until April 29, 2013. Plaintiff did not serve the complaint upon Ellenville until June 5, 2013 and did not file proof of service until September 27, 2013.[2]

The initial conference was eventually held on July 22, 2013 and the Rule 16 scheduling conference was adjourned without date pending a decision on the instant motion.

## III. RELEVANT LEGAL STANDARDS

### A. 120 Day Deadline Under Fed. R. Civ. P. 4(m)

Federal Rule of Civil Procedure 4(m) provides that,

---

[2] General Order Number 25 provides that "Proof(s) of service of process are to be filed with the clerk's office no later than five (5) days after service of the complaint or notice of removal with a copy of this General Order."

- 3 -

> [i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The 120 day deadline starts running when the complaint has been filed. Courts generally consider three factors to determine whether there is good cause within the meaning of Rule 4(m): "'1) the existence of circumstances that made service difficult or impossible, 2) whether the plaintiff was represented by counsel, and 3) the effect of dismissal on plaintiff's claims.'" Tanner v. Lowe's Home Ctr., Inc., No. 5:11–CV–1454, 2013 WL 4424979, at *3 (N.D.N.Y. Aug. 14, 2013) (Suddaby, J.) (quoting Cioce v. Cnty. of Westchester, No. 02–CV–3604, 2003 WL 21750052, at *4 (S.D.N.Y. July 28, 2003)). "A party seeking a good cause extension bears a heavy burden of proof." Alvarado v. Am. Freightways, Inc., No. 04–CV–9536, 2005 WL 1467893, at *5 (S.D.N.Y. June 21, 2005). "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." E. Refractories Co., Inc. v. Forty Eight Insulations, Inc., 187 F.R.D. 503, 505 (S.D.N.Y. 1999) (internal quotations omitted).

### B. 60 Day Deadline Under Local Rule 4.1(b) (General Order Number 25)

Local Rule 4.1(b), encompassing General Order Number 25, provides an additional deadline requirement:

> Upon the filing of a complaint, the Clerk shall issue to the plaintiff General Order 25 which requires, among other things, service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service requirement is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed. R. Civ. P. 4.

N.D.N.Y. L.R. 4.1(b). Courts maintain the discretion to excuse a plaintiff's failure to serve the complaint within this 60 day deadline, as long as the plaintiff serves it within Rule 4(m)'s 120 day deadline. Tanner, 2013 WL 4424979, at *4; see also Norwood v. Salvatore, No. 12–CV–1025, 2013 WL 1499599, at *3 (N.D.N.Y. Apr. 10, 2013) (D'Agostino, J.); Edsell v. Indep. Freightway, No. 94–CV–0227, 1995 WL 375827, at *2–3 (N.D.N.Y. June 16, 1995) (Pooler, J.), aff'd on other grounds, 101 F.3d 681 (2d Cir. 1996).

## III. DISCUSSION

### A. Defendant's Motion to Dismiss

Defendant contends the complaint must be dismissed because plaintiff deliberately chose not to serve his complaint within the 60 day time frame set forth in General Order Number 25 nor the 120 day deadline imposed by Federal Rule of Civil Procedure 4(m) and cannot demonstrate any colorable good faith reason for non-compliance. Plaintiff argues that he was unable to serve the complaint within the proscribed time frames because he was medically incapacitated.

First, it is noted that it took plaintiff 161 days to serve the complaint in this action—from December 26, 2012 to June 5, 2013. Next, in considering whether there are facts to justify a determination that good cause existed to toll a portion of the 120 day service deadline under Rule 4(m), it is found that: (1) no circumstances existed making service difficult or impossible, contrary to what plaintiff alleges; (2) plaintiff is proceeding pro se in this action; and (3) the practical effect of a dismissal on plaintiff's claims would be to preclude him from reasserting them.

As to plaintiff's allegations that he was medically incapacitated and unable to serve the complaint within the December 26, 2012 to April 26, 2013 window as required, his arguments

- 5 -

are unpersuasive. First, plaintiff worked full-time for the majority of scheduled days in January, February, March, and April prior to service of the complaint. According to an affidavit submitted by Jean Miller, Payroll Coordinator and Account Clerk at Ellenville, plaintiff missed only one day of work in January, six days of work in February, zero days of work in March, and two days of work in April.

Second, plaintiff's opposition papers detail a myriad of activities which he undertook relative to both the alleged ongoing discrimination at Ellenville and this lawsuit during the same time period in which he contends he was unable to serve the complaint due to his medical incapacitation. In January 2013, plaintiff continued to oppose discriminatory practices at Ellenville and made numerous requests from defendant under the Freedom of Information Law. On January 23, 2013, he received and reviewed attendance records of another Ellenville employee and sought assistance from the New York State Police regarding that employee. On February 7, 2013, he sought intervention from the teachers union. In doing so, he drafted an interoffice memorandum detailing his complaints and requested a grievance meeting. On February 14, 2013, he submitted another complaint to Ellenville relating to alleged retaliation against children. In support of this complaint, he drafted another letter to Ellenville's superintendent, copying six individuals, including the attorney general and Governor's office. On February 14, 2013, plaintiff drafted an additional interoffice memorandum to the superintendent regarding his FOIL requests.

Plaintiff contends he became violently ill on February 18, 2013, requiring transport to the hospital by ambulance. On February 21, 2013, he wrote a letter to the court requesting an extension of the initial court conference date as he had not served the complaint, due to medical incapacitation. Although it is unclear when plaintiff returned to work after this

incident, records indicate he missed a total of six days of work in February 2013. On March 22, 2013, plaintiff filed an additional complaint with Ellenville via a three page letter. He required medical evaluation again on March 26, 2013, but records indicate he did not miss any work days in March.

By plaintiff's own admissions, while claiming to have been medically incapacitated and unable to serve the complaint by the April 26, 2013 deadline, he continued to make complaints to Ellenville, file Freedom of Information Law requests, and write letters to Ellenville regarding his concerns and this case. In addition, he continued to work full-time for the majority of the time period in question. Further, plaintiff provided little explanation as to what he was doing in the months of March or April 2013, or why he was unable to serve the complaint in those months. For that matter, he has provided little reason why, other than suffering from a short bout of illness—even if serious—in February 2013, he could not serve the complaint within 120 days as required by Rule 4(m).

Next, plaintiff's status as a pro se litigant does not excuse him from the procedural rules of law nor the requirements of Rule 4(m). Plaintiff was issued a Summons on December 28, 2012, two days after he filed his complaint. In this court's Pro Se Handbook, mailed to plaintiff, he was advised that "(i)f you are not proceeding with your action in forma pauperis, you will be responsible for serving the summons and complaint on each defendant, in accordance with Federal Rule of Civil Procedure 4." In General Order Number 25, plaintiff was advised that "(s)ervice of process should be completed within Sixty (60) days from the initial filing date" so as to "fulfill the dictates of the Civil Justice Reform Act Expense and Delay Reduction Plan of this court and to ensure adequate time for pretrial discovery and motion practice." Further, General Order Number 25 advised the plaintiff that "[i]n no event

shall service of process be completed after the time specified in Fed. R. Civ. P. 4, or any other Rule or Statute which may govern service of process in a given action." Plaintiff was well aware of the requirements and his responsibility for effectuating timely service and acknowledged the same when he wrote to Magistrate Judge Hummel requesting an adjournment of the initial conference.

Finally, at first glance it is unclear as to what practical effect a dismissal would have on plaintiff's claims because the parties did not brief the issue. And as plaintiff is proceeding pro se, the complaint is not entirely clear. It is evident that he alleges employment discrimination on the basis of his alleged disability and retaliation by his employer for his complaints of discrimination. His complaints may also plausibly be read to give rise to a claim of a hostile work environment. Such claims relating to disability discrimination are properly raised under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Prior to commencement of ADA litigation, a plaintiff must file an administrative complaint with the EEOC. Such a complaint must be filed within 300 days of the alleged discriminatory act. 42 U.S.C. § 12117; Forsyth v. Fed. Emp't and Guidance Serv., 409 F.3d 565, 572 (2d Cir. 2005).

Plaintiff filed his administrative complaint with the EEOC on July 27, 2012.[3] The EEOC issued plaintiff a right-to-sue letter on September 24, 2012, which he received on September 26, 2012. The ADA requires that a claim be filed in federal court within 90 days

---

[3] It appears there is no dispute that plaintiff's July 27, 2012 EEOC charge was timely filed relative to his allegations—the EEOC did not dismiss his charge as untimely—and moreover plaintiff's complaint specifically identifies discriminatory acts within 300 days prior to the filing of his EEOC complaint. It is noted that plaintiff identifies October 4, 2011, as the date falling 300 days prior to his July 27, 2012, EEOC charge but according to the undersigned's calculations, 300 days prior to July 27, 2012 would have been October 1, 2011. However, the distinction is irrelevant.

of the plaintiff's receipt of a right-to-sue letter from the EEOC. See 42 U.S.C. § 12117(a) (adopting the 90 day limitations period set forth in Title VII, 42 U.S.C. § 2000e–5(f), for the ADA); Johnson v. St. Barnabas Nursing Home, 368 F. App'x 246, 247–48 (2d Cir. 2010). Plaintiff filed suit in this District on December 26, 2012, 91 days after he received the right-to-sue letter. Defendant has not contested the timeliness of plaintiff's complaint and as the 90th day, December 25, 2012, was a legal holiday, plaintiff was permitted until the end of the following day, December 26, 2012, to file his complaint. See Fed. R. Civ. P. 6(a)(1)(C).

It is clear that the instant complaint based off of plaintiff's administrative EEOC charge was barely filed within the required time frame, and if the complaint is now dismissed, the practical effect would be to preclude plaintiff from bringing a new complaint in federal court containing any claims stemming from the July 27, 2012 EEOC charge because any new complaint would be filed *well* beyond 90 days from September 26, 2012. Moreover, even if he were to file a new EEOC charge, which he is free to do, his complaints would be limited to those acts occurring within 300 days prior to the filing date of his new EEOC charge. Thus, plaintiff would be precluded from asserting any of the discrete acts of discrimination alleged in his present complaint. No ruling is made as to whether plaintiff may be able to sustain any of those claims under a continuing violation theory upon the filing of a new complaint.

Plaintiff's opposition to the motion fails to demonstrate good faith for his failure to comply with the requirements of Rule 4(m) and instead attempts to litigate his claims on the merits. He has not carried his heavy burden of proof to sustain a good cause extension. See Alvarado, 2005 WL 1467893, at *5. Plaintiff's failure to serve process in a timely manner was not the result of circumstances beyond his control and therefore an extension is not appropriate. See E. Refractories Co., Inc., 187 F.R.D. at 505. In fact, by plaintiff's own

- 9 -

admissions, he took absolutely no steps to attempt to serve the complaint until May 2013, after the 120 day window had passed. Because he has not demonstrated any good cause excusing his failure to effect service of the complaint in a timely manner, dismissal of the action is warranted even though dismissal would effectively bar recommencement of the action due to the statute of limitations. See Zapata v. City of N.Y., 502 F.3d 192 (2d Cir. 2007).

Although aware that an extension may be granted even in the absence of good cause, such an extension is not warranted having weighed the impact that a dismissal or extension would have on the parties. See id. at 197. With respect to the impact that an extension would have on defendant, it is noted that plaintiff met with the Ellenville superintendent on April 29, 2013, and advised her that he had filed the instant lawsuit against Ellenville. Although apprised of the suit at that point, Ellenville nor its representatives had notice of the existence of the complaint until after the service period expired. Further, Ellenville has already defended to resolution a lawsuit brought by plaintiff arising from the same set of facts.

As the Second Circuit noted in Zapata, "in the absence of good cause, no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect." Id. at 198. Accordingly, defendant's motion to dismiss the complaint for insufficient service of process pursuant to Rule 4(m) will be granted and plaintiff's complaint will be dismissed.

### B. Plaintiff's Motions for Injunctive Relief

Plaintiff has filed two motions for injunctive relief. Because defendant's motion will be granted and plaintiff's complaint dismissed, plaintiff's motions for injunctive relief will be denied as moot.

## IV. CONCLUSION

Plaintiff served the instant complaint on defendant 161 days after filing it and thus failed to comply with the 60 day service deadline imposed by Local Rule 4.1(b) and General Order Number 25 and more importantly, failed to comply with the 120 day service deadline imposed by Federal Rule of Civil Procedure 4(m). He has not demonstrated good cause for his failure and therefore the time for service will not be extended. Defendant's motion to dismiss the complaint for insufficient service of process will be granted. Accordingly, plaintiff's motions for injunctive relief will be denied as moot.

Therefore, it is

ORDERED that

1. Defendant Ellenville Central School District's motion to dismiss the complaint for insufficient service of process pursuant to Federal Rule of Civil Procedure 4(m) is GRANTED;

2. Plaintiff's motions for injunctive relief are DENIED as moot; AND

3. Plaintiff's complaint is DISMISSED.

The Clerk is directed to serve a copy of this Decision and Order upon plaintiff in accordance with the Local Rules and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 31, 2014
       Utica, New York.